NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0204n.06
Filed: March 22, 2005

No. 04-5050

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| JEROME SAWYERS, | ) | |
| | ) | OPINION |
| Defendant-Appellant, | ) | |
| | ) | |
| ————————————— | ) | |
| | ) | |

**Before: GIBBONS and ROGERS, Circuit Judges; and BUNNING, District Judge.**[*]

**DAVID L. BUNNING, District Judge.** On August 8, 2001, Jerome Sawyers was arrested on various drug and weapons charges. Sawyers was subsequently indicted on 4 counts: 21 U.S.C. § 841(a)(1) (distribution of cocaine) (Count 1), 26 U.S.C. § 5861(d) (possession of firearms not properly registered) (Count 2), 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) (Count 3), and 18 U.S.C. § 924(c) (possession of firearms in furtherance of a drug trafficking crime) (Count 4).

Following a jury trial, Sawyers was acquitted of Count 1 and convicted of Counts 2

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

and 3 of the indictment.[1]  He was sentenced to 20 years imprisonment. Sawyers now appeals both his conviction and sentence. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Prior to Sawyers' arrest, Nashville police had been conducting surveillance on Brian M. Horton (a.k.a. "Antonio") (hereinafter "Horton").[2]  The officers arranged a series of controlled drug buys with Horton through a confidential informant ("CI") in an effort to discover the identity of Horton's supplier.

The first buy occurred on July 30, 2001, when the CI purchased one ounce of cocaine from Horton.  After the buy, the officers followed Horton back to his apartment located at 1410 Hermitage Park Drive.

The second buy occurred on August 1, 2001.  After the CI called Horton, the officers observed him leave his apartment and travel to an agreed-upon location, a place called "Uncle Bud's."  There, the CI purchased two and one half ounces of cocaine from Horton. After the sale to the CI, Horton was observed with several individuals at Uncle Bud's.

The third buy occurred on August 6, 2001, when the officers directed the CI to purchase three ounces of cocaine from Horton.  Just as they had done with the prior buys, the officers watched Horton leave his apartment to consummate the buy.  However, prior to this sale, officers observed Horton meet with two black males driving a Nissan Altima. The passenger from the Altima exited the car and delivered the drugs to Horton, at which

---

[1]The jury did not consider Count 4.  See footnote 3.

[2]Brian Horton was named as a defendant in the same indictment as Sawyers, and Counts 4-7 of the indictment refer to him.  However, he is not a party to this appeal.

2

point Horton completed the transaction with the CI.

The final buy transpired on August 8, 2001, when the officers directed the CI to order nine ounces of cocaine from Horton. The officers watched Horton leave his apartment and meet the CI on Bell Road, where Horton told the CI that it would take awhile before he could procure the cocaine. After this meeting, the officers continued to surveil Horton as he returned to his apartment.

Shortly thereafter, Horton was observed leaving the apartment again and meeting two white males in a red pickup truck. After the meeting, Horton traveled to a tire shop, at which point the officers directed the CI to call Horton to see how much longer it would be before he could make the delivery. Horton replied that it would take 30 to 40 minutes longer, and was observed immediately thereafter, entering onto the expressway and heading toward Mt. Juliet, Tennessee.

On his way to Mt. Juliet, Horton made two detours. First, he stopped to meet a white male driving a truck and a white male driving a BMW. Horton then stopped at a tire shop. Horton proceeded to Mt. Juliet and drove to the Willow Creek Apartment Complex, where he parked in front of building five and entered what the police later ascertained to be 509 Willow Creek Drive ("the Willow Creek apartment").

Horton left the apartment a short time later, and while en route back to Davidson County, Nashville police stopped him and recovered six and one half ounces of cocaine from a black bag in his car. Horton was arrested and read his *Miranda* rights. When asked where he had obtained the cocaine, he responded the apartment in Mt. Juliet. Horton also informed police that Sawyers' girlfriend lived in the apartment, that a ten-year-old girl had let him in, and that Sawyers had been present.

3

The officers knew that Sawyers' girlfriend was a woman by the name of Phileiphia Cleveland, and confirmed that she was the lessee of the Willow Creek Apartment. Armed with this knowledge, Officer John Donegan then obtained a search warrant for the apartment.

Based upon the affidavit that is the subject of this appeal, the magistrate judge issued a search warrant for 509 Willow Creek Drive in Mt. Juliet, Tennessee. At that location, officers found cocaine, a Sten 9mm gun, a Norinco 9mm assault rifle (overall length less than 26 inches), and a .45 caliber pistol, among other items. Jerome Sawyers was charged with distribution of cocaine, possession of firearms not properly registered, being a felon in possession of a firearm, and possession of firearms in furtherance of a drug trafficking crime.

Prior to trial, Sawyers moved to suppress the items seized pursuant to the search warrant based upon an allegedly insufficient affidavit. Sawyers alleged that Officer Donegan affirmatively made false statements and omitted certain facts from the affidavit, which he claims were necessary to a finding of probable cause.

After a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) was held, the district court denied Sawyers' Motion to Suppress in a memorandum opinion, finding that there was probable cause based upon the affidavit; that there was no evidence that Officer Donegan intentionally misled the magistrate judge; and that there was sufficient information in the affidavit to establish probable cause.

At trial, Eduardo Guerrero (a.k.a. "Wowie") testified on behalf of the Government. He testified that he had supplied Sawyers with drugs, and that he had given him the machine gun recovered from the Willow Creek apartment. Guerrero also testified,

however, that he had stopped supplying Sawyers with drugs one to two months prior to his August 8 arrest. It was Guerrero's opinion, therefore, that the cocaine found in Horton's car was not attributable to him.

The jury convicted Sawyers of Counts 2 and 3 and acquitted him of Count 1. The jury did not consider Count 4, per the district court's instructions.[3]

On April 25, 2003, the district court conducted Sawyers' sentencing hearing. The court first applied U.S.S.G. § 2K2.1 in conjunction with the convictions on Counts 2 and 3. Despite the fact that Sawyers was acquitted of Count 1, the court found by a preponderance of the evidence that Sawyers possessed the weapons in connection with a drug trafficking offense (distribution of cocaine). Pursuant to section 2K2.1(c)(1)(A), the court then referred to section 2X1.1, which directs the court to apply "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). The court, therefore, found drug trafficking to be the substantive offense, rather than the weapons offenses of which Sawyers was convicted, and applied section 2D1.1 (the drug guidelines). Pursuant to U.S.S.G. § 2D1.1, the court set the base offense level at 32 based upon the amount of cocaine involved (5-15 kilograms), added two points pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of the

---

[3]At the sentencing hearing, the court acknowledged that the Government had been correct in its objection to the jury instruction advising the jury not to consider Count 4 (possession of weapons in furtherance of a drug trafficking crime) if they found Sawyers not guilty of Count 2 (distribution of a controlled substance, that being cocaine). The court acknowledged that, according to the case law, "a person can be found guilty of possession of weapons in furtherance of drug trafficking even though the defendant may have been acquitted of the specific drug crime alleged in the indictment."

firearms in conjunction with drug trafficking, and added two points for obstruction of justice.[4]

Sawyer's Criminal History Category was determined to be Category IV, yielding a guideline range of 262-327 months. Sawyers was subsequently sentenced to 240 months imprisonment.[5]

On June 18, 2003, Sawyers filed a Notice of Appeal.

## II.    ANALYSIS

### A.    Motion to Suppress

#### 1.    District Court Opinion

The district court denied Sawyers' Motion to Suppress, finding that Officer Donegan's affidavit established probable cause to issue a search warrant for the 509 Willow Creek Drive apartment, and that nothing in the affidavit was deliberately false or misleading.

Specifically, the court found there was no evidence to indicate that Officer Donegan intended to mislead the issuing judicial officer. The court further concluded that, even without Horton's statement placing Sawyers in the apartment, there was sufficient information in the affidavit to establish probable cause. The court based this finding on the following facts: Horton was arrested and found to have cocaine in his possession after being followed to the Willow Creek Drive apartment; Horton stated that he had obtained the

---

[4]At trial, Sawyers' girlfriend Phileiphia Cleveland testified. At sentencing, the court found that her testimony at trial directly contravened her testimony at the suppression hearing. The court further found that Sawyers had "participated in" Cleveland's false testimony and was, therefore, guilty of obstruction of justice.

[5]The term of imprisonment represented the statutory maximum term of120 months for each count to run consecutively.

6

cocaine from the Willow Creek apartment; the officers had determined by going to the apartment and checking the electrical records that the apartment belonged to Sawyers' girlfriend; Sawyers resided in the Willow Creek Drive apartment with Cleveland; and there was evidence of drug activity at the Willow Creek Drive apartment. Finally, the court held that the use of the cross-referencing guideline was proper because it was clear, by the preponderance of the evidence, that Sawyers possessed the firearms in connection with drug trafficking crimes.

### 2. Discussion

With respect to the Motion to Suppress, the issues presented by this appeal are: (1) whether the affidavit was supported by probable cause to search 509 Willow Creek Drive; and (2) whether the affidavit contained false information and/or omitted information that was essential to the magistrate's finding of probable cause, thereby demonstrating reckless disregard for the truth.

A court of appeals reviews a district court's factual findings on a motion to suppress under the clearly erroneous standard, while its legal conclusions are reviewed *de novo*. *United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002); *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993).

### a. Probable Cause

Sawyers claims that the district court erred in finding that the affidavit accompanying the search warrant contained sufficient information to establish probable cause. In particular, he asserts that any determination of probable cause was negated by: (1) an apparent typographical error in the body of the document; and (2) Horton's lack of

credibility.

The Fourth Amendment to the United States Constitution states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. In determining the sufficiency of an affidavit to establish probable cause, an impartial magistrate is confined to the four corners of the document. *See Aguilar v. Texas*, 378 U.S. 108, 113 (1964).

In *Illinois v. Gates*, the Supreme Court explained that "probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. 213, 232 (1983). A reviewing court must only find a "substantial basis" for concluding that a search would uncover evidence of wrongdoing. *Id.* at 238. Furthermore, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

In *Gates*, the Supreme Court dispensed with the two-pronged test developed in *Aguilar* and *Spinelli*, in favor of a "totality of the circumstances" test for determining whether probable cause exists. *Id.* at 238. Rather than wholly discarding "veracity" and "basis of knowledge" as relevant considerations, the Court incorporated them into the totality approach. The Court also defined the task of the issuing magistrate, which is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The Court was convinced that this flexible, easily-applied standard

8

would better accommodate the public and private interests protected under the Fourth Amendment. *Id.* at 239.

This court in *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998), reiterated the level of specificity required under the Fourth Amendment, noting that search warrants are directed not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found. *Id.* at 814 (citing *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978)). This court further stated that "[t]he affidavit in support of the warrant need not present information that would justify the arrest of the individual in possession of or in control of the property." *Id.*

In the case at bar, Officer Donegan provided the following information in his affidavit for the search warrant covering 509 Willow Creek:

Paragraph 1: On July 27, 2001, Officer John Donegan began setting up drug buys between a CI and an individual known as "Antonio" ("Horton"). The CI indicated that Horton was able to sell him cocaine and that Horton was involved in cocaine distribution with Jerome Sawyers through a location called Ray's Body Shop.

Paragraph 2: The first buy between the CI and Horton occurred on July 30, 2001. The CI wore a body transmitter and body recorder, and was provided marked vice funds with which to make the purchase. In exchange for the funds, the CI was given a plastic bag containing approximately one ounce of cocaine. Officer Donegan and other officers followed Horton to Hermitage Park Drive, where he was observed going in the breeze way for apartments 1410 and 1411. During the time of the surveillance, Horton was driving a car registered to Candice Gipson.

Paragraph 3: Donegan checked electric records and found that Ashley Gipson

9

maintains electric service at 1410 Hermitage Park Drive. The same records show that Ashley Gipson's place of employment is Ray's Body Shop.

Paragraph 4: Officer Donegan instructed the CI to make a second buy from Horton on August 1, 2001. The CI was again fitted with a body transmitter and body recorder and provided marked vice funds with which to make the buy. At this time, Officer John Donegan directed other police officers to conduct surveillance on 1410 Hermitage Park Drive. Those officers informed Officer Donegan that Horton had left that apartment and was en route. The officers informed Donegan that Horton had not made any stops on his way from the apartment to the meeting place with the CI. After the exchange, Officer Burchwell recovered two and a half ounces of cocaine from the CI. Horton was then observed meeting with several other people in the same vicinity. In the affidavit, Donegan surmised that Horton was delivering cocaine to these people.

Paragraph 5: The third buy occurred on August 6, 2001, when surveillance was again conducted on 1410 Hermitage Park Drive. Horton was observed leaving that location, meeting the CI, and selling him three ounces of cocaine.

Paragraph 6: On August 8, 2001, the officers again set up a buy from Horton through the CI and conducted surveillance on 1410 Hermitage Park Drive (the location from which Horton was observed leaving to conduct the deal). The CI contacted Horton to inquire how long it would take for him to procure the drugs, while Officer John Donegan maintained surveillance on Horton. After answering "30-40 minutes," Officer Donegan observed Horton immediately drive to the Willow Creek Apartment Complex in Mt. Juliet, park in front of building number five, and, a few minutes later, exit the building and get back into his car. The CI had previously told Officer Donegan that Jerome Sawyers was living

10

in Mt. Juliet with his girlfriend.

Paragraph 7: Officer Donegan and other officers then stopped Horton once he re-entered Davidson County, where they recovered several ounces of cocaine from a black bag in the car. After being read his rights, Horton told the police he had gotten the cocaine from the apartment in Mt. Juliet, to which Officer Donegan had followed him. Horton also stated that the apartment was rented by Sawyers' girlfriend and that Sawyers was present when he picked up the cocaine. On June 2, 2001, a citizen called the police department and reported that Tyrone's[6] girlfriend, Phileiphia Cleveland, had her apartment broken into and that a large amount of cocaine and money was taken. The caller stated the location of the apartment as 2204 Valleybrook apartments. Electricity records showed that Cleveland maintained electric service at that address, and that she had since closed that account.

Paragraph 8: On August 8, 2001, Officer Donegan directed Officer Greg Adams to go to the Willow Creek Apartment complex to ascertain in which apartment Cleveland was living. Lease documents revealed that she occupied apartment number 509, the same apartment Officer Donegan had observed Horton visiting just prior to his arrest.

The affidavit also included information pertaining to Officer John Donegan's level of expertise in ascertaining drug conspiracies, as well as information on the behavior and "practices" of drug dealers.

Sawyers first argues that, based on Officer Donegan's mistaken use of the name

---

[6]This substitution of the name "Tyrone" for the name "Jerome" in the officer's affidavit is an issue of contention between the parties in establishing probable cause for 509 Willow Creek Drive, as further explained below.

11

"Tyrone" in Paragraph 7, the affidavit did not establish probable cause to search 509 Willow Creek Drive.

The Sixth Circuit addressed this very issue in the case of *United States v. Plunk*, 456 F.2d 1027 (6th Cir. 1972). In *Plunk*, there was a discrepancy between the date the warrant was issued and the date on the accompanying affidavit. *Id.* at 1027. In dicta, this Court stated, "[W]e observe that nothing in this record indicates any possibility of prejudice arising from the error in dating of the affidavit for the search warrant, nor...is there any explanation tendered for it except typographical error. Under these circumstances normally we would be inclined to apply the 'commonsense and realistic' rule of *United States v. Ventresca*." *Id.* at 1028.

In *Ventresca*, the Supreme Court adopted a "commonsense" approach to determining the existence of probable cause:

> These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants...must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108 (1965).

At trial, Officer Donegan testified that Jerome Sawyers' brother, who was also known to Nashville Police, was named "Tyrece." He also stated that he made the typo in the "haste of a criminal investigation." The Court finds Officer Donegan's explanation entirely reasonable.

12

Furthermore, in light of the fact that the affidavit specifically refers to the relationship between Sawyers and Horton, and that "Tyrone" is mentioned nowhere else in the affidavit, the magistrate properly found probable cause to search 509 Willow Creek Drive based solely on the information contained within the four corners of the document.

Sawyers also argues that the affidavit was insufficient because the only person who provided information of illegal drug activity at the Willow Creek apartment was Horton, and "reliability" and "basis of knowledge" were deficient. Sawyers, however, fails to appreciate that Horton's credibility is merely one factor to be assessed under the "totality of the circumstances" approach. *Gates*, 462 U.S. at 238. In *Spinelli*, the informer's tip was central to the finding of probable cause and the Court stated:

> Where...the informer's tip is a necessary element in a finding of probable cause, its proper weight must be determined by a more precise analysis.... If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered....[The magistrate] must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?

*Spinelli*, 393 U.S. at 415. In the instant case, by contrast, Horton's "tip" - stating that he had obtained the drugs from the location the officers had just seen him exit (i.e., the Willow Creek apartment) - was not the only evidence supporting a finding of probable cause. The independent corroboration conducted by the policemen provided other indicia of reliability. *See Gates*, 462 U.S. at 237-38, 243-44.

As detailed more fully above, upon arrest, Horton stated that he had gotten the drugs from the Willow Creek apartment and that Sawyers lived there with his girlfriend. The police then checked the rental records at the Willow Creek apartments to determine which

13

apartment Phileiphia Cleveland, whom they knew to be Sawyers' girlfriend, was renting. This was the same apartment the officers had seen Horton enter and exit after he told the CI he was going to retrieve the cocaine for the controlled buy. Although the record shows that Horton made other stops on the way to the Willow Creek apartment, this information was not included in the affidavit.[7] Therefore, from the four corners of the affidavit the magistrate could conclude that the cocaine Horton had in his car, which he claimed to have obtained from the Willow Creek apartment the officers had just observed him visit, had in fact come from that apartment.

In terms of the affidavit as reviewed by the magistrate, it was mainly Horton's conduct and the independent police investigation that established probable cause to search 509 Willow Creek Drive. Horton's statement that he had gotten the cocaine from the Willow Creek apartment merely confirmed what the police had just observed. Therefore, even if Horton fails the credibility test, it is harmless error because, under the totality of the prevailing circumstances, the affidavit as a whole established probable cause.

A magistrate's determination of probable cause should be paid great deference by reviewing courts. *Id.* at 236 (quoting *Spinelli*, 393 U.S. at 419). Here, the issuing magistrate was not required to find that Jerome Sawyers was dealing drugs to Horton in order to issue a search warrant. Rather, the magistrate merely needed to determine that probable cause existed as to the Willow Creek apartment. *Mays*, 134 F.3d at 814. The affidavit at issue

---

[7]As mentioned above in the statement of facts and discussed in detail below, Officer Donegan did not include in his affidavit the fact that, on his way to the Willow Creek apartment, Horton made various stops, meeting other people. This leads to the possibility that Horton had secured the cocaine found in his car from a source other than the Willow Creek apartment, but since the issue here is only whether probable cause existed from the four corners of the affidavit, it is not relevant at this point.

reflects that the CI knew that Sawyers and Horton were involved in drugs. It also describes three controlled purchases from Horton prior to his arrest on August 8, 2001. Moreover, the police observed Horton travel to the Willow Creek apartment, and immediately after leaving, stopped him and found six and one half ounces of cocaine in his vehicle. Horton admitted that he had obtained the cocaine from the Willow Creek apartment.

Based upon the foregoing, therefore, the Court concludes that the district court properly denied Sawyers' Motion to Suppress, as the affidavit accompanying the search warrant contained sufficient information to establish probable cause.

### b.  Omissions from the Affidavit

In addition to challenging the information that *was* contained in the affidavit, Sawyers asserts that certain information was omitted, which would have defeated a finding of probable cause. In support, Sawyers relies on information that was collected by the officers but not included in the affidavit.

In particular, Sawyers' seizes on two omissions which, if included, would have allegedly defeated probable cause: (1) the fact that Horton made a number of stops on the way to the Willow Creek apartment, raising the possibility that the drugs found in Horton's car were from a source other than Sawyers at the Willow Creek apartment; and (2) the fact that, after his arrest, Horton gave conflicting answers in response to the officers' questions regarding the source of the cocaine. Immediately after his arrest, Horton stated that he had obtained the cocaine from the Willow Creek apartment and that Sawyers was present. In a subsequent interview with Agent Dan Kennedy, however, Horton stated that he had

15

obtained the cocaine two days prior and that he had visited the Willow Creek apartment on

August 8, 2001, merely to make a phone call.[8]

This Court in *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) addressed

the issue of material omissions:

> Although material omissions are not immune from inquiry under *Franks*, we
> have recognized that an affidavit which omits potentially exculpatory
> information is less likely to present a question of impermissible official
> conduct than one which affirmatively includes false information. *United
> States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). This is so because an
> allegation of omission "potentially opens officers to endless conjecture about
> investigative leads, fragments of information, or other matter that might, if
> included, have redounded to defendant's benefit." *Id.* (quoting *United States
> v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). If the defendant does succeed
> in making a preliminary showing that the government affiant engaged in
> "deliberate falsehood" or "reckless disregard for the truth" in omitting
> information from the affidavit, the court must then consider the affidavit
> including the omitted portions and determine whether probable cause still
> exists. *United States v. Bonds*, 12 F.3d 540, 568 n.23 (6th Cir. 1993).

*Atkin*, 107 F.3d at 1217. Moreover, it is unreasonable to expect a police officer to include

every piece of exculpatory information gathered about the case in the affidavit because the

standard for obtaining a search warrant is lower than the standard to convict. *Mays*, 134

F.3d at 814-816.[9]

---

[8]Sawyers also claims that the following information was excluded from the affidavit: (1) Dr.
Allen Philp's testimony at the suppression hearing that Sawyers was in the hospital recovering from
gun shot wounds from July 27 to August 1 or 2, during which Horton was under surveillance, and
during which the drug buys with the CI had been arranged; (2) a statement to FBI Agent Dan
Kennedy, in which Horton asserted that he had obtained the cocaine recovered from the black bag
in his car two days *prior* to his arrest, contrary to his original statement; (3) information in Officer
Leon Taylor's investigative report that, after the August 6, 2001 drug sale between Horton and the
CI, Horton was observed meeting two black males in a Nissan Altima; (4) information in Officer
Gene Donegan's investigative report regarding the August 6, 2001 drug buy and Horton's activities
prior to the sale; and (5) Officer Donegan's apparent knowledge that Horton had a source of drugs
other than Sawyers.

[9]The Court in *Mays* concluded that it was improper to apply the rationale of *Brady v.
Maryland*, 373 U.S. 83 (1963), to the warrant application process. *Mays*, 134 F.3d at 815.

Alternatively, the courts have universally recognized a good faith exception to the exclusionary rule. Under that exception, even if a warrant is later found to be defective, if the executing officers relied upon it in good faith, evidence obtained pursuant to the search is still admissible. *United States v. Leon*, 468 U.S. 897 (1984). In *Leon,* a CI of unproven reliability informed police that two individuals were selling cocaine from their residence. *Id.* at 901. The district court upheld the defendant's motion to suppress, stating that even though the police officers had acted in good faith, the affidavit was insufficient to establish probable cause. *Id.* at 903-04. The circuit court similarly refused the Government's invitation to recognize a good faith exception to the Fourth Amendment exclusionary rule. *Id.* at 905. The Supreme Court, however, reversed, holding that although the warrant was invalid, the evidence seized pursuant thereto was nevertheless admissible. *Id.* The rationale offered by the Court was that "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure '[works] no new Fourth Amendment wrong.'" *Id.* at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 354 (1974)).

Therefore, evidence obtained in good faith reliance upon a facially valid search warrant should not be excluded unless such exclusion furthers the purpose of the

*Brady* involved the due process guarantees afforded a defendant during trial, which the Court in *Mays* asserted do not apply in the less formal process of an officer obtaining a search warrant. The Court stated that it is improper in this setting to "entitl[e] the subject of a search warrant to disclosure of any information potentially contradicting a finding of probable cause." *Id.* This is so because the probable cause determination implicated in *Franks* is not an adjudication of guilt or innocence and thus does not implicate due process. *Id.* at 816. Finally, the Court in *Mays* noted that "*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." *Id.* (citing *Franks*, 438 U.S. at 165).

17

exclusionary rule, that is, to deter police misconduct. *Id.* at 918. However, in the situation where the mistake was made by the issuing magistrate, excluding the evidence obtained by the police does nothing to deter such misconduct. *Id.* In exploring the parameters of the good faith exception, the Court made clear that the sufficiency of an affidavit could and should still validly be questioned in certain situations: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *id.* at 923 (citing *Franks*, 438 U.S. 154); (2) where "the issuing magistrate wholly abandoned his judicial role," *id.*; (3) where the "affidavit [is] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" *id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975)); and (4) where the warrant is facially deficient, as in "failing to particularize the place to be searched or the things to be seized," *id.* Therefore, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926.

In the instant case, Sawyers charges Officer Donegan with conduct that evidenced "reckless disregard for the truth." *See Franks*, 438 U.S. at 155. The Government, however, contends that Sawyers was not even entitled to a *Franks* evidentiary hearing because he did not make the necessary preliminary showing. *Franks*, 438 U.S. at 156. In *Franks*, the Supreme court clarified, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory...[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied

18

by an offer of proof." *Id.* at 171. Sawyers has not, however, satisfied these threshold requirements. He merely catalogues information that had been complied by the police but was not included in the affidavit, and makes no offer of proof that these omissions were made with "reckless disregard for truth." Furthermore, without such proof that Officer Donegan omitted this information with "reckless disregard for truth," the Court is left with merely a list of "'investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *Atkin*, 107 F.3d at 1217 (quoting *Colkley*, 899 F.2d at 301 (4th Cir. 1990)).

Although this Court concludes that probable cause existed within the four corners of the affidavit and that there was a sufficient basis for the district court judge to deny a *Franks* hearing, the judge elected to hold a *Franks* hearing because he was unable to determine from the record and oral argument whether the omission of the stated information was intentional. At the hearing, Officer Donegan testified regarding the alleged omissions in the affidavit. First, Donegan stated that he was unaware of Horton's inconsistent statement to Agent Dan Kennedy. With respect to other omissions regarding Horton's activities, including on the day of the August 6, 2001 buy, Donegan stated that he elected to exclude the information because it was merely duplicative of other information already contained in the affidavit that established that Horton was, in fact, a drug dealer. No other proof was adduced to establish that Officer Donegan recklessly disregarded the truth. The district court, therefore, correctly found that "there is no evidence in the record to suggest that Donegan intended to mislead [the issuing magistrate]."

As the Government points out, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded

19

critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays*, 134 F.3d at 816 (emphasis omitted). This statement requires a defendant to make a *strong* preliminary showing both (1) that the affiant *intended* to exclude the information *and* (2) that the information be *critical* to a finding of probable cause. As previously demonstrated, Sawyers failed as to both showings. First, he failed to prove the requisite intent. Second, the omitted information was superfluous. In light of the extensive surveillance that had been conducted, and information obtained as a result, neither fact was dispositive to the determination of probable cause.

Even if the Court were to conclude that the affidavit, including the omitted information, was legally deficient, the *Leon* good faith exception would apply. As noted above, Officer Donegan did not engage in a reckless disregard for the truth or attempt to mislead the issuing magistrate. Similarly, there is no indication that the magistrate acted improperly. Further, it has already been shown that the information that was included in the affidavit provided a sufficient basis for a determination of probable cause, and the warrant was not so facially deficient as failing to particularize the place or things to be seized. Therefore, even if probable cause were lacking in the affidavit, rendering the accompanying search warrant invalid, the evidence obtained pursuant to the search warrant was nevertheless admissible.

Sawyers relies on this court's decision in *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), in support of his argument that the good faith exception is inapplicable in this case. In *Weaver*, the affiant officer used a boilerplate affidavit, filled in minimal particularized information, and conducted virtually no independent corroboration. *Id.* at

20

1375-79 ("[the affiant officer] possessed only [the informant's] tip linking [the defendant] to possible drug activities, yet undertook no substantive independent investigative actions to corroborate his informant's claims, *such as surveillance of [defendant's] residence.*" (emphasis added)). Therefore, because the affiant officer had possessed "little firsthand information and no personal observations," the court declared that the good faith exception to the exclusionary rule should not apply. *Id.* at 1380.

*Weaver* is easily distinguishable from this case. First, Officer Donegan and the other officers had been conducting surveillance on Horton for two weeks prior to his arrest. They observed Horton enter and exit the apartment at 509 Willow Creek Drive just prior to his arrest and the discovery of the cocaine in his vehicle. Furthermore, the affidavit was not merely boilerplate. Rather, it chronicled Horton's history as a drug dealer, as well as his connection to Sawyers, and explained Sawyers' connection to Cleveland, the renter of the Willow Creek apartment.

Based upon the foregoing, therefore, the Court concludes that any alleged deficiencies in the contents of the affidavit did not rise to the level of "reckless disregard for the truth." Furthermore, even if the omitted information had been included, probable cause nevertheless existed.

## B.    Sentencing

On December 6, 2004, this case was submitted on briefs. In this appeal, Sawyers challenges the propriety of the district court's imposition of an enhancement under the United States Sentencing Guidelines. In particular, Sawyers challenges: (1) the two-point enhancement pursuant to section 2D1.1(b)(1) for possession of firearms in conjunction with drug trafficking; and (2) the two-point enhancement for obstruction of justice.

21

The Court concludes that the sentencing issues in this case require the district court's reconsideration in light of *United States v. Booker,* and *United States v. Fanfan*, Nos. 04-104, 04-105, 2005 WL 50108 (Jan. 12, 2005). Thus, it is ordered that this case be remanded for resentencing. Upon remand, the district court should impose a sentence in accordance with the Supreme Court's *Booker/Fanfan* decision.

For the reasons states in this Opinion, we affirm Sawyers' conviction and remand for resentencing in accord with this Opinion and the Supreme Court's Opinion in *Booker*

\\ca6cin4\unpub\Published\05a0204n-06.txt

22