**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0050n.06

**No. 08-2437**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

WILLIAM ELIAS KHAMI,

      Defendant-Appellant.

——————————————————————— /

**FILED**
**Jan 26, 2010**
LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    NORRIS, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Defendant, William Elias Khami, appeals from his felon-in-possession of a firearm conviction pursuant to 18 U.S.C. § 922(g)(1) resulting from a conditional guilty plea that reserved his right to appeal two issues to this Court. Defendant first appeals the denial of his motion to suppress the fruits of the search of his home, claiming that the underlying search warrant was defective and that the search and seizure was in violation of his Fourth Amendment rights. In addition, Defendant appeals the denial of a motion to dismiss his indictment based on a challenge to the constitutionality of 18 U.S.C. § 922(g)(1) in light of recent Supreme Court precedent interpreting the Second Amendment. For the reasons set forth below, we **AFFIRM** the district court's orders denying both motions.

## BACKGROUND

Two separate law enforcement ecstasy investigations were ongoing in August 2007 when both investigations focused on law enforcement's suspicions regarding activities taking place at Defendant's home at 19168 Havana Street, Detroit, Michigan. The investigation headed by Immigration and Customs Enforcement (ICE) did not result in law enforcement seeking a search warrant, but the government alleged in its theory of the criminal case, which is not before this Court, that an ecstasy transaction occurred at the 19168 Havana Street location among Roni Shaba and four others. The investigation that led to the search of Defendant's home was led by CHIEF, a combined task force of state, local, and federal law enforcement.

The CHIEF investigation began surveilling two co-defendants, Kenzill Stanciel and Carlos Willis, on August 28, 2007. CHIEF investigators observed Stanciel and Willis meet with co-defendant Mario Harrell at a BP station where the three appeared to engage in a suspicious transaction in which items were transferred from Stanciel's and Willis' vehicles to Harrell's vehicle. Willis and Stanciel were then observed following Harrell in tandem in their vehicles. Willis and Stanciel were later apprehended during traffic stops, and approximately 9,500 ecstasy pills were recovered from Stanciel's vehicle. Willis then told investigators that the brown paper bag transferred to Harrell contained money utilized to purchase the ecstasy recovered during the traffic stop. According to Willis, the actual drug transaction took place near 19168 Havana Street, but not at that location. Willis told CHIEF investigators that he saw "an Arab male" get into Harrell's car at a house near 19168 Havana Street and that he

> observed Harrell hand the bag containing the money to [an Arab male] in exchange
> for a brown paper bag which Willis had previously seen in [the Arab male]'s

possession. According to Willis, the brown paper bag was given to Stanciel and when arrested shortly thereafter, it was found in his possession, containing the 9,500 pills of Ecstasy.

(Appellee's Br. 4). Willis identified a photo of Defendant as the Arab male he linked to this drug transaction. It was determined after indictment that Defendant was not the Arab male in question, but that Roni Shaba was. Willis also identified, from a photo, Defendant's residence as near the location where the drug transaction occurred involving the Arab male.

CHIEF investigators were unable to follow the car driven by Harrell, but they were able to trace the car to Harrell and obtain his address: 19329 Riopelle Street, Detroit, Michigan. The officers observed Harrell at that address and followed him to Defendant's residence. They observed Harrell and an individual matching Defendant's description having a meeting. CHIEF investigators did a utilities check to reveal that 19168 Havana Street was the residence of William Elias Khami and then performed a Secretary of State search to obtain the photo of Defendant. The officers also learned that Defendant had two prior drug felony convictions, including one for methamphetamine delivery and manufacturing.

During the interrogation of Willis, which involved two officers (one from CHIEF, one from DEA) questioning him on separate occasions on August 28, 2007, Willis also described in detail the house where the actual drug transaction began with the Arab male getting into Harrell's vehicle. That house was not the same house as Defendant's residence, which Willis identified as near the place where the Arab male – whom Willis identified from a photograph as Defendant – was picked up to participate in the transaction.

The facts that Defendant alleges were left out of the supporting affidavit for the search warrant are summarized in his brief as follows:

> Willis describes the house as South of 7 Mile Road; Mr. Khami's house is North of 7 Mile Road. Willis describes the house as a "two-family flat"; Mr. Khami's home is a single-family dwelling. Willis describes the house as being "beige brick"; Mr. Khami's house has white aluminum siding on it. Willis describes the house as being located "near the corner"; Mr. Khami's house is in the middle of his block

(Appellant's Br. at 16, punctuation modified).

Defendant was indicted on September 13, 2007 (superseded by a corrected indictment on January 31, 2008) on three counts in an indictment that included other defendants and four counts total: Count I: conspiracy to possess with intent to distribute more than 9,500 pills of 3, 4 methylenedioxymethamphetamine ("Ecstasy") in violation of 21 U.S.C. § 841(a)(1); Count III: distribution of the same in violation of 21 U.S.C. § 841(a)(1); Count IV: being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Counts I and III were dismissed as to Defendant on March 12, 2008 on motion of the government.

Defendant filed two motions, both of which were denied, that challenged the remaining count of the indictment (Count IV). On December 11, 2007, Defendant filed a motion to suppress the evidence (in particular the firearm) recovered in the search of his home, arguing that the search warrant was without probable cause and that the affidavit supporting it left out material facts intentionally to mislead the magistrate. A hearing on this motion was held on January 24, 2008, and the motion was denied on May 12, 2008 after supplemental briefing. On January 16, 2008, Defendant filed a motion to dismiss Count IV of the indictment arguing that the statute under which

he was indicted is an unconstitutional infringement of his Second Amendment right to bear arms. The district court denied this motion on March 10, 2008.

Defendant pled guilty to Count IV of the indictment on June 3, 2008 with the benefit of a conditional plea agreement that preserved his right to appeal the denial of both motions and also noting the then pending Supreme Court decision in *District of Columbia v. Heller,* --- U.S. ---, 128 S.Ct. 2783 (2008). The district court sentenced Defendant to 51 months' incarceration with three years of supervised release to follow on October 24, 2008. Defendant then timely appealed to this Court.

## DISCUSSION

## I. DEFENDANT'S MOTION TO SUPPRESS

### A. Standard of Review

This Court reviews the denial of a motion to suppress using a standard of review in which factual findings of the district court are reviewed for clear error and questions of law are reviewed *de novo. United States v. Blair,* 524 F.3d 740, 747 (6th Cir. 2008); *United States v. Herndon*, 393 F.3d 665, 667 (6th Cir. 2005). "When a district court has denied a motion to suppress, we consider the evidence in the light most favorable to the government." *United States v. Long,* 464 F.3d 569, 572 (6th Cir. 2006) (citing *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir. 1998) (en banc)). The district court's denial of a *Franks* hearing is reviewed under the same standard of review as the motion to suppress. *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (citing *United States v. Graham,* 275 F.3d 490, 505 (6th Cir. 2001)).

**B.      The District Court Did Not Err in Denying the Motion to Suppress**

Defendant makes three arguments in support of his appeal: 1) that the search warrant was not supported by probable cause on its face; 2) that the affidavit supporting the search warrant was intentionally misleading in its material omission of facts which, if included, would have defeated the finding of probable cause by the magistrate; and 3) that the officers are not entitled to the exception to the exclusionary rule for good faith reliance on a facially valid warrant.  On the first two theories, the district court did not err in denying the motion to suppress evidence from the search of Defendant's home.  The third theory, the good faith exception, need not be addressed given the disposition of the other two.

Defendant's motion to suppress based on his first argument that the search warrant was not supported by probable cause on its face is unavailing:

> To determine whether probable cause for a search exists, a judge issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed.

*United States v. Gunter,* 551 F.3d 472, 479 (6th Cir. 2009) (quoting *Illinois v. Gates,* 462 U.S. 213, 238-239 (1983)).  Once the magistrate has determined that probable cause supports the issuing of a search warrant, that determination is conclusive unless the evidence on the record compels a different conclusion or it can be shown that the magistrate acted arbitrarily.  *See United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000).

A search warrant affidavit must contain sufficient allegations to support the magistrate's finding that there is a nexus between the location to be searched and probable criminal activity. *United States v. Laughton,* 409 F.3d 744, 749-50 (6th Cir. 2005)*; United States v. Carpenter,* 360 F.3d 591, 594-95 (6th Cir. 2004) (en banc). The affidavit need not show sufficient allegations to support a finding that criminal activity is actually occurring at that location, but must include allegations sufficient to show a link between probable criminal activity and that specific location. *United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998).

The search warrant affidavit in this case, which was fairly lengthy, consisted of the following allegations. First, the CHIEF investigator alleged that in his lengthy experience in law enforcement and in drug investigations, the articles sought in the search warrant are the kind of evidence usually recovered from homes of people who are suspected of involvement in drug trafficking. The affidavit then details the CHIEF surveillance of three vehicles believed to be involved in narcotics trafficking which led to the recovery of 9,500 ecstasy pills in a traffic stop of two of the vehicles. The affidavit then discusses using the license plate number of vehicle #3 to determine the registered address, and law enforcement officers then going to that address and observing the black male previously seen participating in the three-vehicle transaction. That male was followed to 19168 Havana Street where he met with an Arab male who had come from inside the home. Then the affidavit discusses information obtained from Willis, one of the defendants arrested in the traffic stop of the first two vehicles which describes the drug transaction that occurred at an unknown house, and then alleges that Willis identified Defendant as the Arab male involved in that transaction and identified 19168 Havana Street from photographs as near the location of the drug transaction. The affidavit concludes

7

with allegations that Defendant lists 19168 Havana Street as his address on his driver's license and that Defendant has two prior drug convictions.

The allegations in the affidavit supporting the search warrant were sufficient to support an independent determination by the magistrate that there was probable cause to search the home. There was evidence from a named informant identifying Defendant from a photograph as involved in the transaction. The independent observations of the CHIEF investigators also implicated Defendant's involvement and created a nexus to the house because those officers saw the driver of the third vehicle (Harrell) go to Defendant's house and meet with him shortly after the drug transaction. While that surveillance alone would probably not be sufficient to establish probable cause since there is no allegation that Defendant received any goods from Harrell in that meeting so as to create suspicion regarding his involvement in the ecstasy ring, it does lend credibility to Willis' identification of Defendant as the Arab male involved. Considering the totality of the circumstances, this evidence was sufficient to establish a nexus between criminal activity and Defendant's home. Once that determination was made, the magistrate could rely upon the expertise of the officer swearing the affidavit, assuming the officer could attest to sufficient experience in these kinds of criminal investigations, to draw reasonable inferences as to what types of evidence might be recovered in the home. *See United States v. Williams,* 544 F.3d 683, 687 (2008) (citing *United States v. Caicedo*, 85 F.3d 1184, 1192-93 (6th Cir. 1996)).

Defendant also argues that the officer was intentionally misleading by leaving out material facts that would have defeated probable cause, and so the district court erred in not granting a *Franks* hearing. In order to be entitled to a *Franks* hearing to establish material factual omissions from a

warrant, a defendant must show that his case is the "*very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause." *Mays v. City of Dayton,* 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original). This Circuit has repeatedly held that the standard for obtaining a *Franks* hearing is higher for a claim of material omission than for an allegedly false affirmative statement. *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001), *United States v. Sawyers*, 127 F. App'x 174, 183 (6th Cir. 2005)). This higher bar is in recognition of the fact that criminal investigations are usually fast-paced and have many sources of information that may not all be recognized as equally important to the officers involved, and so this Circuit has held that this higher bar prevents "endless rounds of *Franks* hearings" based on "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). This higher standard has not been met by Defendant's allegations.

Defendant's allegations of intentional misleading of the magistrate are simply too conclusory to constitute the substantial showing required by this Circuit. His relevant allegations amount to an assertion that the search warrant was the result of overzealous law enforcement officers engaged in interlocking investigations and that there were facts known to the swearing officer that were intentionally not included. But there is no evidence that the two investigations were working in tandem, nor is there evidence to support the allegation that the information was intentionally left out. Defendant also relies heavily on the fact that Willis' credibility was not specifically alleged in the

warrant and that it was later determined that Defendant was incorrectly identified by Willis and was not the Arab male involved in the ecstasy ring. But Defendant provides no evidence that law enforcement knew Willis to be unreliable or that law enforcement doubted, or even should have doubted at the time, the veracity of Willis' identification of Defendant from the photograph. Defendant also does not provide any evidence that the fact there were two simultaneous investigations led to an intentional misleading of the magistrate. Therefore, Defendant has not met his burden of proof by making a substantial showing that the facts omitted from the affidavit were done so with an *intention to mislead*.

Further, even if this Court reviews the warrant with the allegedly material facts that were omitted, the inclusion of those facts would not tend to defeat probable cause. The affidavit already notes that the house involved in the drug transaction was *an unknown house* and that Willis simply indicated that 19168 Havana Street was *near* that house. Therefore, the additional descriptions of the house where the drug transaction occurred would not defeat the theory of probable cause for searching Defendant's house, which was that Defendant met with Harrell (the driver of the third car) shortly after the drug transaction that led to the recovery of 9,500 ecstasy pills, that 19168 Havana Street is Defendant's residence, that Willis identified Defendant as the Arab male involved in the transaction, and that in the experience of the swearing officers, certain types of evidence are likely to be found in the home of those linked to drug trafficking, especially when the meeting between Harrell and Defendant took place at Defendant's home.

Because the warrant was supported by probable cause and Defendant had not made the proper showing to warrant a *Franks* hearing, there is no need to reach the issue of whether the officers are

entitled to the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). *Gunter*, 551 F.3d at 482 (citing *United States v. Miller,* 314 F.3d 265, 271 (6th Cir. 2002) (good faith exception not applicable when court finds warrant was based on probable cause)).

The district court did not err in denying Defendant's motion to suppress because the affidavit was sufficient to establish probable cause. The district court also did not err in denying a *Franks* hearing because Defendant did not make the necessary showing of an intent to mislead to support a *Franks* hearing and even with the omitted facts the warrant still supported probable cause.

## II. DEFENDANT'S MOTION TO DISMISS COUNT IV OF THE INDICTMENT BASED ON THE ALLEGED UNCONSTITUTIONALITY OF 18 U.S.C. § 922(g)(1).

### A. Standard of Review

Defendant moved to dismiss Count IV of the indictment based on the alleged unconstitutionality of 18 U.S.C. § 922(g)(1). The district court's denial of a motion to dismiss an indictment is reviewed *de novo* by this Court. *United States v. Ali,* 557 F.3d 715, 720 (6th Cir. 2009). Therefore, the district court's findings of fact and conclusions of law are fully reviewable. The district court's ruling on the constitutionality of a federal statute is also reviewed *de novo*. *United States v. Rose*, 522 F.3d 710, 716 (6th Cir. 2008).

### B. The District Court Did Not Err in Denying the Motion to Dismiss Count IV

The Supreme Court's recent decision in *District of Columbia v. Heller* interpreted the Second Amendment to guarantee an individual right to bear arms in some circumstances. 128 S.Ct. at 2797-98. Defendant argues that this decision supports his challenge to the constitutionality of § 922(g)(1), which this Court has previously held to be constitutional along with several other related provisions regulating possession of firearms. *See United States v. Napier*, 233 F.3d 394, 403 (6th Cir. 2000)

(collecting pre-*Heller* cases from various circuits upholding the constitutionality of § 922(g)); *see also United States v. Waller,* 218 F.3d 856, 857 (8th Cir. 2000) (holding that it is well-settled that § 922(g)(1) does not violate the Second Amendment).

Several circuits, including the Sixth Circuit, have been presented with similar challenges to the constitutionality of § 922(g)(1) in light of *Heller*. In each case, our sister Circuits have found that the pronouncement in *Heller* that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" is sufficient to dispose of the claim that § 922(g)(1) is unconstitutional. 128 S.Ct. at 2816-17; *see United States v. Stuckey*, 317 F. App'x 48, 50 (2d Cir. 2009); *United States v. Brunson,* 292 F. App'x. 259, 261 (4th Cir. 2008); *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009); *United States v. Irish,* 285 F. App'x. 326, 327 (8th Cir. 2008); *United States v. Smith*, 329 F. App'x 109, 110-11 (9th Cir. 2009); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Battle*, 2009 WL 3065103, *1-2 (11th Cir. 2009). Our Circuit's prior decision on the constitutionality of § 922(g)(1) post-*Heller* also quotes the dicta from *Heller* and then reviews the cases in which this Circuit had previously held § 922(g)(1) to be constitutional. *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008).

Only two Circuits have published opinions on this specific issue since *Heller*.[1]  The Tenth Circuit majority opinion simply relies on the dicta in *Heller* and cites the only other published decision, which is from the Fifth Circuit.  *McCane*, 573 F.3d at 1047.  However, the concurrence in the Tenth Circuit case expresses some concern that this dictum conflicts with the underlying theory of *Heller* that longstanding firearm restrictions are not in conflict with the Second Amendment since felon firearm restrictions may not be longstanding and also expresses concern that this dictum needlessly constrains the development of Second Amendment doctrine, but the concurrence still recognizes that *Heller* seems to foreclose the possibility that § 922(g)(1) is unconstitutional.  *Id.* at 1047-50 (Tymkovich, J. concurring).  The Fifth Circuit decision simply quotes the dictum from *Heller* to dispose of the constitutional challenge to § 922(g)(1).  *Anderson*, 559 F.3d at 352.

"[This Court has] noted that [we] are obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale."  *United States v. Marlow,* 278 F.3d 581, 588 n.7 (6th Cir. 2002) (citing *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements"); *accord McCoy v. Mass. Inst. of Tech.,* 950 F.2d 13,

---

[1]The Seventh Circuit recently published a decision regarding § 922(g)(9), which restricts firearm ownership for people who have been convicted of a domestic violence misdemeanor, indicating that simple reliance on the language in *Heller* about long-standing gun control statutes would not be sufficient to justify the continued constitutionality of that statute.  *U.S. v. Skien,* 587 F.3d 803 (7th Cir. 2009) (remanding for the district court to consider whether the statute passes intermediate scrutiny and for the government to argue that position).  However, since *Heller* is directly on point in this case, whereas the rationale of § 922(g)(9) is not specifically referenced, it is more fully dispositive of this issue.

19 (1st Cir.1991) ("federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings . . . ")). The dicta in *Heller* carries significant weight in our analysis, especially since Defendant appears to be raising a facial challenge to this statute, which would require the Defendant to argue that the felon-in-possession statute is unconstitutional as applied to all felons covered by the statute. *See United States v. Salerno,* 481 U.S. 739, 745 (1987) (in a facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid."). Even an as applied challenge would be difficult for Defendant to mount since he was on electronic tether at the time of the search and had two prior drug felony convictions, which suggests that Defendant likely is within the category of felons to whom the rationale in *Heller* would clearly apply, and therefore for whom Congress can constitutionally restrict the possession of firearms.

Since *Heller* indicates that its holding does not bring into question the constitutionality of § 922(g)(1), and this Court has not been presented with any convincing argument that its dicta should not be very persuasive in this case, the district court did not err in denying Defendant's motion to dismiss Count IV.

**CONCLUSION**

For the foregoing reasons set forth in this opinion, we **AFFIRM** the district court's denial of the motion to suppress and the motion to dismiss count IV of the indictment.