*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1663**

State of Minnesota,
Respondent,

vs.

Wayland Deshawn Jones,
Appellant.

**Filed September 8, 2014
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-11-37345

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

        Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from his conviction of being an ineligible person in possession of a firearm, appellant argues that the district court committed reversible error by accepting his stipulation to an element of the offense without securing a sufficient jury-trial waiver on that element. We affirm.

## FACTS

On November 30, 2011, three plainclothes Minneapolis police officers were on patrol in an unmarked squad car in the area of 23rd Avenue North and Sixth Street North in Minneapolis. At approximately 12:00 a.m., the officers observed two individuals dressed in black cross 23rd Avenue North and head south on Sixth Street North. The officers saw one of the individuals yank on the front doors of two houses, while the second individual stood watch. The officers requested that uniformed officers in marked squad cars stop the two individuals.

Police officers in two marked squad cars responded to the request. The officers illuminated the area with their headlights, revealing two individuals who immediately began running westbound on Sixth Street. The undercover officers followed the individuals in their unmarked car. One of the officers observed an individual, who was later identified as appellant Wayland Deshawn Jones, cross an alley that was illuminated by the unmarked car's headlights. The officer saw a silver handgun in appellant's right hand. The second individual split off from appellant and began running down the alley towards the unmarked squad car, and the officer observed a black handgun in his right

hand.  The other two undercover officers also observed both men carrying handguns in their right hands as they crossed the alley, but they could not see the colors of the handguns.

One of the uniformed officers who responded to the undercover officers' request for assistance observed a silver semi-automatic handgun lying in the driveway in the back of 2206 Lyndale Avenue North as he ran after appellant.  The handgun was missing the magazine, which he saw a few feet away.  When the officer stopped running and stood near the handgun, he observed appellant hiding approximately 20 feet away in the backyard of 2210 Lyndale Avenue North.  The officer pointed his gun at appellant and ordered him to lie on the ground; appellant cooperated.  One of the undercover officers placed appellant in handcuffs and took the silver handgun into evidence.  A short time later, police officers arrested the second individual and located a black Smith & Wesson handgun nearby.

A forensic scientist at the Minnesota Bureau of Criminal Apprehension analyzed DNA evidence recovered from both handguns.  The DNA profile that the scientist obtained from the silver Ruger handgun indicated a mixture of DNA from three or more individuals.  The DNA profile that the scientist obtained from the black Smith & Wesson handgun was also consistent with a mixture of DNA from three or more individuals.  The scientist compared appellant's DNA profile with the DNA profiles on both guns, and she concluded that appellant could not be excluded from being a contributor to the DNA mixture on either one of them.  The scientist concluded that 96.7% of the general population would be expected to be excluded from the DNA mixture found on the Ruger

handgun, and 93.6% of the general population could be excluded from being a contributor to the DNA mixture found on the Smith & Wesson handgun.

Respondent State of Minnesota charged appellant with possession of a firearm by an ineligible person. The complaint alleged that appellant was ineligible to possess a firearm because he was adjudicated delinquent for second-degree assault in 2007, and that he illegally possessed a firearm on November 30, 2011.

The district court held a six-day jury trial. Before testimony began, the parties discussed their agreement to present the following stipulation to the jury: "Both parties stipulate and agree [that] the defendant, Wayland Jones, is a person who is prohibited from possessing firearms under the laws of the State of Minnesota. This stipulation is evidence for your consideration just like any other evidence presented in this case." The district court asked appellant if he agreed that the stipulation could be read to the jury, and appellant replied, "Yes." Appellant's counsel then questioned appellant as follows:

> [APPELLANT'S COUNSEL]: [W]e're here for a jury trial today, and you understand that at a trial you're presumed innocent. And it's [the prosecutor's] job to prove you're guilty beyond a reasonable doubt.
> [APPELLANT]: Yeah.
> [APPELLANT'S COUNSEL]: And in order to prove you guilty beyond a reasonable doubt, she has to prove each and every [element] of the offense. Do you understand that?
> [APPELLANT]: Yes.
> [APPELLANT'S COUNSEL]: And one of the elements of being a prohibited person in possession of a firearm is that you were actually prohibited from possessing a firearm. Do you understand that's one of the elements?
> [APPELLANT]: Yeah.
> [APPELLANT'S COUNSEL]: And the reason that you're prohibited from possessing a firearm is because you were adjudicated delinquent of a second[-]degree assault which is

4

considered a crime of violence under the statutes. Do you understand that?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: And that juvenile adjudication for second[-]degree assault then subsequently prevents you from possessing a firearm. Do you understand that?

[APPELLANT]: Yeah.

[APPELLANT'S COUNSEL]: So by agreeing to this stipulation, what we're doing is we're agreeing that the jury be informed that you're not—that you're a person who's prohibited from possessing a firearm, but they will not have the information that it's because of an adjudication for second-degree assault. Do you understand that?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: And by agreeing that you're a prohibited person, you're agreeing that [the prosecutor] does not have to prove to a jury that you in fact have this juvenile adjudication for second-degree assault?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: Do you have any questions about what that stipulation means?

[APPELLANT]: No.

[APPELLANT'S COUNSEL]: And are you agreeing to that stipulation freely and voluntarily, meaning nobody's forcing you to do so?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: And you and I talked about the pros and cons so to speak of having that stipulation?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: And you've been able to ask me the questions you want to ask me?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: And you understood the answers?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: So you do admit that you did have a prior felony adjudication, a crime of violence in 2007?

[APPELLANT]: Yep.

5

At the end of the state's presentation of its case, the district court read the stipulation to the jury. Appellant then waived his right to testify at trial. The jury found appellant guilty of possession of a firearm by an ineligible person. This appeal follows.

## DECISION

To convict appellant of possession of a firearm by an ineligible person, the state was required to prove that appellant (1) was previously convicted of "a crime of violence" and (2) possessed a firearm. Minn. Stat. § 624.713, subd. 1(2) (2010). Appellant argues that the district court erred by accepting his stipulation to the first element without obtaining his waiver of *all* his jury-trial rights, in particular his right to call witnesses, to cross-examine witnesses, and to testify on his own behalf. He contends that the district court's error necessitates reversal of his conviction and a new trial.

Because appellant did not object to the district court's failure to obtain his personal waiver of some of his jury-trial rights, this court applies plain error review. *State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011). "On appeal, an unobjected-to error can be reviewed only if it constitutes plain error affecting substantial rights." *State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006). The plain error standard requires (1) error; (2) that is plain; and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "An error is plain if it was clear or obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotations omitted). "An error affects substantial rights if the error was prejudicial and affected the outcome of the case." *Kuhlmann*, 806 N.W.2d at 853.

6

A defendant has a right to a jury trial in a criminal case under both the United States and Minnesota Constitutions. U.S. Const. amend. VI; Minn. Const. art. I, § 6. The right to a jury trial "includes the right to a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Kuhlmann*, 806 N.W.2d at 848. A defendant may waive his right to a jury trial and that waiver must be knowing, intelligent, and voluntary. *Id.* A defendant also may waive his right to have a jury determine an element of the offense by stipulating to that element. *State v. Craig*, 807 N.W.2d 453, 466 (Minn. App. 2011), *aff'd*, 826 N.W.2d 789 (Minn. 2013). "A defendant's stipulation must specifically waive his or her right to testify, to require favorable witnesses to testify in his or her defense, to have the state's witnesses testify, and to question the state's witnesses." *Id.* The defendant must personally waive these jury-trial rights. *Id.*

Here, appellant's counsel questioned appellant extensively on the record about his decision to stipulate that he is prohibited from possessing firearms; whether he understood that the prosecutor had to prove his guilt beyond a reasonable doubt on each element of the offense, including that he is prohibited from possessing firearms; and about the previous offense that resulted in him being prohibited from possessing a firearm. Appellant also agreed that he understood that the jury would not receive information about his underlying offense; that he was entering into the stipulation freely and voluntarily after having an opportunity to discuss it with his counsel; and admitted that he has a prior felony adjudication from 2007. But appellant's counsel did not question appellant on the record to establish that, as to the stipulated element, he was

7

giving up his jury-trial rights, including his right to call witnesses, to cross-examine witnesses, and to testify. It was error to fail to obtain appellant's waiver of these trial rights.

But the error does not affect appellant's substantial rights because it was not prejudicial and did not affect the outcome of the case. *See Kuhlmann*, 806 N.W.2d at 853. Appellant does not argue that he did not call witnesses, cross-examine witnesses, or testify because he was not advised of his right to do so. He also does not dispute the existence of his prior juvenile adjudication or argue that the stipulation was not admissible. *See id.* And appellant benefitted from the stipulation because it prevented the state from presenting evidence of the circumstances surrounding his prior offense, which protected him "from the possibility that the jury might improperly use his previous conviction[] as evidence that he committed the current offense." *Id.* Accordingly, the district court did not commit plain error affecting appellant's substantial rights by accepting appellant's stipulation to the prior-conviction element of the offense and waiver of his jury-trial rights on that element.

Minnesota courts are seeing more and more cases where a prior conviction is an element of a criminal prosecution, including ineligible-possession-of-a-firearm cases, domestic-abuse cases, driving-while-impaired cases, and others. This court regularly reviews cases where stipulations by defendants do not adequately address all of the jury-trial waiver requirements of *Craig*, as well as cases where a defendant claims ineffective assistance of counsel because his counsel did not advise him to stipulate to his prior conviction or adjudication. When a prior conviction or adjudication is an element in a

case, the best practice is for the parties and the district court to address issues surrounding the defendant's prior conviction or adjudication before trial. This helps facilitate the early entry of stipulations to a prior conviction or adjudication and a proper waiver of *all* of the defendant's jury-trial rights. It also affords the district court the opportunity to fully address the advantages and disadvantages of stipulating to a prior conviction or adjudication with a pro se defendant.

**Affirmed.**